McNALLY *v.* THE STEAM-TUG L. P. DAYTON, THE STEAM-TUG JAMES BOWEN, and the float or scow called "NUMBER FOUR."

*(Circuit Court, S. D. New York. November 9, 1880.)*

1. COLLISION—NEGLIGENCE—BURDEN OF PROOF.—A libel for collision alleged negligence on the part of the tugs Dayton and Bowen and the scow Number Four. The answer of the Dayton alleged that the collision was wholly caused by the fault of those on board and in charge of the Bowen and the scow, "as alleged in the libel." The answers of the Bowen and the scow alleged that the collision was due wholly to the fault of those managing the Dayton and the boats in her tow. *Held,* that these admissions by the Dayton upon the one hand, and the Bowen and the scow on the other, would not throw on either of the libelled vessels, as between such vessel and the libellant, the burden of showing fault in the other.

2. SAME—SAME—SAME.—*Held, further,* that there must be *prima facie* evidence of negligence, in such case, in order to throw the burden of proof upon either of the libelled vessels.

3. SAME—SAME—SAME.—*Held, further,* that the mere fact that the injured boat was lashed to the side of the Dayton, without motive or steering power, and the absence of any allegation of fault against her in the answers filed, did not *prima facie* establish any fault in any particular one of the vessels libelled.

**4.** SAME—SAME—SAME.—*Held, further*, that, although it might be the proper conclusion from the pleadings in such case that some one or two, or all of the three vessels sued, must have been in fault, it is for the libellant to show which one, and not for any one of the three to exculpate itself, or prove fault in either or both of the other two.

**5.** SAME—SAME—SAME.—The answer of the Dayton alleged that the Dayton and Bowen were approaching in such a way that the proper course was for each to pass on the starboard side of the other; that the Dayton took the proper measures to pass in that manner, and the proper signals were blown, but that the Bowen failed to give heed to said signals, and to take measures to pass on the starboard hand of the Dayton and the boats in her tow. *Held*, that this did not show any negligence in the Dayton, in the absence of any allegation to the contrary in the libel.

**6.** SAME—SAME—SAME.—The answers of the Bowen and the scow each alleged that at the time the Dayton and her tow were discovered coming down the river, by the pilot of the Bowen, the green light of the Dayton was visible, and she appeared to be going between the Bowen and the New York shore, which was then about 300 yards distant; that at a proper distance the Bowen blew two blasts, to which the Dayton responded by two blasts, and the Bowen thereupon starboarded, heading as far to the westward as she could safely do without danger of colliding with another tug and tow on her port side, heading in the same direction; that the Dayton, instead of keeping her course, or starboarding so as to pass on the starboard side of the Bowen, so changed her course as to shut out her green light and show her red light to the Bowen; that thereupon, it being evident that the Dayton could not cross the bow of the Bowen and of the scow without imminent danger of collision, the Bowen slowed, stopped, and backed, and that at the time of the collision the headway of the Bowen and the scow was about stopped. *Held*, that there was nothing in any of these averments which made out a *prima facie* case of negligence against the Bowen or the scow.

*E. D. McCarthy*, for libellant.

*W. D. Shipman*, for the Bowen and the scow.

*Carpenter & Mosher*, for the Dayton.

BLATCHFORD, C. J. In this case I find the following facts as between the libellant and the claimant of the steam-tug L. P. Dayton, such facts being found from the libel and the answer of said claimant, no testimony being put in on the part of either of said parties:

On the fourteenth of February, 1879, the boat Centennial, of the burden of about 300 tons, and of which the libellant was master, was taken in tow by the steam-tug L. P. Dayton,

at the pier foot of Fifty-ninth street, New York, to be towed
to the Erie basin, at about 5:30 P. M.   The said boat was
loaded with a cargo of wheat.   When the Dayton left Fifty-
ninth street pier she had in tow four boats, two on each side.
The Centennial was the inside starboard boat; that is, the
one lashed to the starboard side of the Dayton.   She was 103
feet in length, and her bow projected some 20 feet beyond the
bow of the Dayton.   The evening was clear and starlit, and
the tide ebb.   The Dayton landed one of the boats which had
been on her port side at the Eagle pier, Hoboken, and there-
after pursued her course with the remaining three boats.
When about opposite or a short distance above pier 1, North
river, and about 300 yards from the piers on the New York
shore, the Centennial was run into by the scow Number Four,
which was then in tow of the steam-tug James Bowen, and
received such injuries that she sank, with her cargo.   The
Number Four was lashed to the port side of the Bowen, and
the two were proceeding from a point in the East river to
the Long dock, Jersey City.   At the time of the collision the
Bowen was on a course opposite or nearly opposite the course
then being taken by the Dayton and her tow.   The Centen-
nial was under the control and subject to the direction of the
Dayton, having neither propelling nor steering power of her
own.

On the foregoing facts I find, as a conclusion of law, that
as the libel alleges that the Dayton was negligent and in
fault in various particulars specified in the libel, and as the
answer of the claimant of the Dayton denies each of said alle-
gations of fault on the part of the Dayton, and as no facts
are proved in the case as against the Dayton, except the fore-
going facts admitted by said answer, and the libellant has
proved no negligence or fault on the part of the Dayton, the
libel must be dismissed as to the Dayton, with costs to her in
this court, and with $24.25 costs to her in the district court,
against the libellants.

In this case I find the following facts as between the libel-
lant and claimant of the steam-tug James Bowen, such facts

being found from the libel and the answer of said claimant, no testimony being put in on the part of either of said parties.

On the evening of the fourteenth of February, 1879, the steam-tug James Bowen took in tow in the East river the scow Number Four, the scow being lashed to the port side of the Bowen. The Bowen and the scow were bound to the Long dock, Jersey City. The tide was ebb. The Bowen and the scow proceeded down the East river to the Battery, and rounded the Battery. At a point about opposite pier 1, North river, and about 300 yards distant from the New York shore, the bow of the boat Centennial, which was being towed by the steam-tug L. P. Dayton on the starboard side of the Dayton, and was going down the North river, came into collision with the bow of the said scow Number Four, and the effect was that the Centennial sank.

On the foregoing facts I find, as a conclusion of law, that, as the libel alleges that the Bowen was negligent and in fault in various particulars specified in the libel, and as the answer of the claimant of the Bowen denies each and every allegation in the libel charging or imputing any fault or negligence to the scow or the Bowen, or those in charge thereof, and as no facts are proved in the case as against the Bowen, except the foregoing facts admitted by said answer, and the libellant has proved no negligence or fault on the part of the Bowen, the libel must be dismissed as to the Bowen, with costs to her in this court, and with $23.95 costs to her in the district court against the libellant.

In this case I find the following facts as between the libellant and the claimant of the scow Number Four, such facts being found from the libel and the answer of said claimant, no testimony being put in on the part of either of said parties:

On the evening of the fourteenth of February, 1879, the steam-tug James Bowen took in tow, in the East river, the scow Number Four, the scow being lashed to the port side of the Bowen. The Bowen and the scow were bound to the

Long Dock, Jersey City. The tide was ebb. The Bowen and the scow proceeded down the East river to the Battery, and rounded the Battery. At a point about opposite pier 1, North river, and about 300 yards distant from the New York shore, the bow of the boat Centennial, which was being towed by the steam-tug L. P. Dayton on the starboard side of the Dayton, and was going down the North river, came into collision with the bow of the said scow Number Four, and the effect was that the Centennial sank.

On the foregoing facts I find, as a conclusion of law, that, as the libel alleges that the scow was in fault in particulars specified in the libel, and as the answer of the claimant of the scow denies each and every allegation in the libel charging or imputing any fault or negligence to the scow or the Bowen, or those in charge thereof, and as no facts are proved in the case as against the scow except the foregoing facts admitted by said answer, and the libellant has proved no negligence or fault on the part of the scow, the libel must be dismissed as to the scow, with costs to her in this court, and with $23.25 costs to her in the district court against the libellant.

The answer of the Dayton alleges that this collision was wholly caused by the fault of those on board and in charge of the Bowen and the scow, "as alleged in the libel." This admission by the Dayton certainly can have no effect to throw on the Dayton, as between her and the libellant, any burden of showing fault in the Bowen and the scow. The libellant and the Dayton agree that there was fault in the Bowen and the scow. But when it comes to making proof of such fault, which proof must be made as against the Bowen and the scow to condemn them, they having denied the libellant's allegation of fault in them, and the libellant having initiated such allegation of fault in them, the libellant must go forward and prove such allegation, or else his libel must be dismissed as to the Bowen and the scow. It is of no consequence that such allegation is admitted in the answer of the Dayton. So, also, the allegation in the answer of the

Bowen and in the answer of the scow, that the collision was due wholly to the fault of those managing the Dayton and the boats in tow of her, is only an admission of an allegation made in the libel as respects the Dayton, and can have no effect to throw on the Bowen or the scow, as between either of them and the libellant, any burden of showing fault in the Dayton.

Whatever cases are found, where, on a libel filed by a vessel at anchor, or lying at a pier, or in stays, against a vessel colliding with her, it has been held that the mere fact of a collision by a vessel with another one thus helpless is *prima facie* evidence of negligence and fault in the former, and throws on her the burden of proof, such doctrine does not apply to this case, even though the Centennial was helpless, lashed to the side of the Dayton, and having no motive or steering power. There must, in all cases, be *prima facie* evidence of negligence. There is none in this case, as between the libellant and any one of the three vessels sued. The Centennial was in motion with the Dayton. Her helplessness, and even the absence of any allegation of fault against her, does not establish *prima facie* any fault in any particular one of the three vessels sued. Even though it may be the proper conclusion from the pleadings that some one or two, or all of the three vessels sued must have been in fault, it is for the libellant to show which one, and not for any one of the three to exculpate itself, or prove fault in either or both of the other two. In an admiralty suit between two parties only, for a collision, the rule in England seems now to be that the burden of proof is not on the claimant, even when he sets up matter strictly justificatory or excusatory, until a *prima facie* case of negligence is shown.

In *The Marpesia*, L. R. 1 Privy Council Appeals, 212, in 1872, inevitable accident was set up as a defence by the claimant in a collision case, and it was held that in such a case the burden of proof lies, in the first instance, on him who brings the suit, and does not attach to the vessel sued until a *prima facie* case of negligence is shown.

In *The Abraham*, 2 Aspinall's Mar. Law Cases, N. S. 34, in

1873, the suit was against an overtaking vessel, which was bound to keep out of the way. The answer admitted the overtaking, and set up inevitable accident by the entangling of the rudder chains of the overtaking vessel. The plaintiffs contended that on these pleadings the defendants ought to begin, while the defendants contended that the plaintiffs ought to show a *prima facie* case. This was on the view that the pleadings did not show a *prima facie* case of negligence, although the overtaking vessel was bound to keep out of the way. Sir Robert Phillimore, following *The Marpesia*, held that the plaintiffs must begin.

In *The Benmore*, L. R. 4 A. & E. 132, in 1873, the answer made no charge of negligence against the plaintiffs, but denied generally the averments of the petition, and pleaded inevitable accident. The case was one of a collision between two sailing vessels, and it appeared from the pleadings that the vessel sued was on such a tack that she was bound to keep out of the way of the other vessel. Sir Robert Phillimore held that it had been the practice to call on the defendants to begin in cases where no charge of negligence was made against the plaintiff, and the only defence raised on the pleadings was inevitable accident, but that on the decision in *The Marpesia* the plaintiffs must begin.

As respects the Dayton, no *prima facie* case of negligence on her part is shown by her answer. The fact that the collision occurred while the Centennial was under the control and direction of the Dayton, and had neither propelling nor steering power of her own, is not *prima facie* evidence of negligence in the Dayton. The answer of the Dayton alleges that the Dayton and the Bowen were approaching in such a way that the proper course was for each to pass on the starboard side of the other; that the Dayton took the proper measures to pass in that manner; and the proper signals were blown, but that the Bowen failed to give heed to said signals, and to take measures to pass on the starboard hand of the Dayton, and the boats in her tow. There is nothing to the contrary of this alleged in the libel, and this does not show any negligence in the Dayton. The answers of the Bowen and the

scow are no evidence against the Dayton. Even under the most stringent rule, if the Dayton alone were sued, the burden of proof to show negligence in her would, on the libel and her answer, be on the libellant.

As respects the Bowen and the scow no *prima facie* case of negligence is shown as to either of them by her answer. The answer of each alleges that at the time the Dayton and her tow were discovered coming down the river by the pilot of the Bowen the green light of the Dayton was visible, and she appeared to be going between the Bowen and the New York shore, which was then about 300 yards distant; that at a proper distance the Bowen blew two blasts, to which the Dayton responded by two blasts, and the Bowen thereupon starboarded, heading as far to the westward as she could safely do without danger of colliding with another tug and tow on her port side, heading in the same direction; that the Dayton, instead of keeping her course or starboarding so as to pass on the starboard side of the Bowen, so changed her course as to shut out her green light and show her red light to the Bowen ; that thereupon, it being evident that the Dayton could not cross the bow of the Bowen and of the scow without imminent danger of collision, the Bowen slowed, stopped, and backed, and that at the time of the collision the headway of the Bowen and the scow was about stopped. There is nothing in any of these averments which makes out a *prima facie* case of negligence against the Bowen or the scow. It is urged for the libellants that the answer of the Bowen shows that she had the Dayton on her starboard side, with the courses of the two vessels crossing so as to involve risk of collision, and that, therefore, under rule 19 of section 4233 of the Revised Statutes it was the duty of the Bowen to keep out of the way of the Dayton, and as she did not a *prima facie* case of negligence is thus made out against her by her answer. This is an error.

The facts stated in the answer of the Bowen do not show that the courses of the two tugs were crossing when the Bowen discovered the Dayton. On the contrary, the green light of the Dayton was then outside to the Bowen, and not

to her red light, and the Dayton appeared to be going between the Bowen and the New York shore, to the eastward, and in a direction which would cause her green light to still be visible to the Bowen, and her red light to be still invisible. This would insure safety and no collision; and to insure it still more the Bowen blew two whistles, and the Dayton answered with two whistles. After that the Bowen starboarded. Even if, before so starboarding, and while so starboarding, the Bowen is to be considered as having the Dayton on her starboard side, with the courses of the two vessels crossing, (which is by no means clear on these averments in the answer of the Bowen,) her answer shows that she took proper measures to keep out of the way of the Dayton; that such measures were assented to at the time by the Dayton as proper; and that then the Dayton changed her course and went across the bow of the Bowen. Under these circumstances the Bowen slowed, stopped, and backed. The answer of the Bowen states, substantially, that there was imminent danger of collision if she kept on. There is nothing in all this to show negligence in the Bowen. When the Dayton so came suddenly across the bow of the Bowen a case was not made within rule 19, although in that position the Bowen had the Dayton on her starboard side, and their courses were crossing; and, even if it were, the answer shows that the Bowen did all she could to keep out of the way of the Dayton. The libel, so far from alleging that it was a fault in the Bowen to slow, stop, and back, alleges as a fault in her that she did not reverse, or did not do so soon enough. The isolated fact of her slowing, stopping, and backing cannot be taken away from the connection in which it is found in the answer, and separated from the circumstances under which the answer states it occurred, particularly as the libel states distinctly that it was a fault in her not to reverse.

It is urged that it works injustice to the libellant to compel him to prove anything, because all his proof to inculpate one tug must exculpate the other. But that is a position in which he has placed himself, if it exists. In his libel, however, he alleges specific faults against each tug, and on them claims

that each tug is in fault. The gravamen of the libel is that both tugs were to blame, and of course that showing one in fault will not show the other to be free from fault.

Not only did the libellant introduce no evidence in the district court, but he has introduced none in this court, although the appeal states that he intends to have the case heard in this court on proofs and testimony. As no case of negligence is made out against any one of the three vessels sued, the libel must be dismissed as to each.